The Union Central Life Ins. Co., Appellee, v.
Pattison et al., Appellant.

(No. 7595—Decided July 7, 1952.)

*Messrs. Dinsmore, Shohl, Sawyer & Dinsmore,* for appellee.

*Mr. Sol Goodman, Mr. Roy L. Struble* and *Mr. Harold C. Knecht,* for appellants.

*Per Curiam.* The plaintiff, having alleged the performance of all the procedural proceedings essential to convert a stock insurance corporation into a mutual insurance corporation, that it had notified the defendant stockholders thereof and requested them to deliver their shares and the certificates therefor upon payment of $25 per share, as provided in such plan of mutualization, and their refusal, and that they had waived tender of such amount, prays that the defendants be decreed to surrender said certificates for cancellation upon payment of $25 per share, and upon failure to so surrender said certificates, and the payment into court of $25 per share, that the court decree the cancellation of the stock and that such decree operate in lieu of the surrender of such certificates. As is apparent, the petition invokes the exercise of the jurisdiction conferred by Section 9364-2a, General Code, upon the Court of Common Pleas to grant the relief prayed for upon proof of the completion of the mutualization process.

Identical petitions were filed against many stockholders. These actions were consolidated in accord-

ance with a stipulation that the rights of all the defendants were identical.

The defendants answered, admitting that all the defendants as owners of 33,570 shares, excepting the owners of 46 shares, had voted, through the instrumentality of a voting trust, as stockholders in favor of the mutualization, and that the owners of the 46 shares had been concluded by the vote of the majority in favor of such plan.

As we construe the answer and cross-petition, they deny that what was done was effective to accomplish mutualization for the following reasons:

(1) The long delay from July 29, 1941, when the directors adopted the plan, and it was approved by the stockholders on August 7, 1941, to June 27, 1947, when it was approved by the superintendent of insurance.

(2) Representations by the board of directors that the price of $25 per share was fair and reasonable.

(3) The alleged great enhancement in value of the stock since the vote of the stockholders approving the plan and the price.

(4) Their inability to sell their stock at its alleged enhanced value during such period because of the pendency of the mutualization proceedings.

(5) Inadequacy of the dividends declared during such period.

(6) Failure to notify them of the meeting of the policy holders.

(7) Expiration of the voting trust in which they had joined before the meeting of the policy holders, at which they approved the plan.

(8) Change in personnel of policy holders during the interval.

There are other allegations of conclusions which the pleader draws from the foregoing allegations, but these add nothing to the defensive allegations.

In the prayer of the cross-petition, the defendants seek to condition the relief sought by the plaintiff upon paying to them the sum of $125 per share or such amount as might be determined by the court or by appraisers appointed by the court, or the division and distribution of the accumulation of profits alleged to have taken place during the delay.

We think it would tend to narrow the inquiry to say here that as we view it, none of the affirmative relief for which the defendants pray as a condition to relief to the plaintiff could, under any circumstances, be granted.

If the mutualization has been accomplished, the plaintiff is entitled to the relief sought. If it has not been accomplished, the plaintiff remains a stock insurance corporation, in which the defendants are stockholders with all the rights of stockholders.

By reply, the plaintiff denied any fault on its part resulting in delay; admitted that no dividends had been paid since April 1, 1948; admitted that the voting trust expired on January 2, 1947, and was not renewed by defendants; and affirmatively alleged that prior to completion of mutualization the defendants did not undertake to withdraw their votes, or consent or in any manner indicate that they no longer acquiesced therein. The plaintiff also admitted giving the notice of completion of the mutualization by the approval of the superintendent of insurance and the demand for the surrender of the stock.

Later, by supplemental petition, the plaintiff alleged that an action was instituted by defendant—Ernestine Pattison—on behalf of herself and other stockholders too numerous to mention, but affected in the same way, against this plaintiff, seeking a declaratory judgment as to her rights as a stockholder, in view of said proceedings for mutualization, and an injunction, in

which she set forth the facts as alleged by the plaintiff in this action, in which action by Ernestine Pattison, the court, on demurrer to the petition, declared that all proceedings to effect the mutualization of the corporation had been duly and regularly performed, "that there existed," as a result, "a valid and binding contract between the defendant company, its shareholders and policyholders, which, in view of the absence of any fraud, is not open to attack," that this judgment was affirmed by the Court of Appeals, and is conclusive upon all the parties.

By answer to this supplemental petition, the defendants admitted the facts excepting the terms and effect of what the court had declared. The defendants' interpretation would have left open their right to have the value of their stock determined in an action, such as this, to require a surrender of the stock and certificates. As we have already stated, we are of the opinion that such relief cannot be granted in this case. And we do not construe the decision in the *Ernestine Pattison case* as so declaring.

On these pleadings, the case came on for trial in the Court of Common Pleas, and after a trial the court rendered judgment for the plaintiff in accordance with its prayer, dismissed the defendants' cross-petition, and overruled their motion for a new trial. It is from that judgment that this appeal on questions of law and fact was taken.

The case is now under submission after a trial at which the evidence introduced in the Common Pleas Court trial was introduced by agreement of counsel, and additional evidence in the form of a deposition was introduced, likewise by agreement.

However, we find very little, if any, dispute as to the essential facts. They are indisputable.

The board of directors adopted this plan of mutualization on July 25, 1941, in accordance with Sec-

tions 9364-1 to 9364-8, General Code. A meeting of the stockholders was called, to be held on August 7, 1941. At that meeting all the defendants, excepting the holders of a few shares, voted in favor of the plan. None of the defendants voted against it, and all became bound by the action of the stockholders at that meeting. 'No stockholder availed himself of a dissenter's right to have the value of his stock fixed, as provided for in Section 9364-2a, General Code.

A meeting of the policy holders to consider the plan was called for October 24, 1941. At that meeting it was disclosed that a policyholder by the name of Belden had filed an action to enjoin the mutualization. This action did not reach final judgment until November 13, 1944, when the Supreme Court of the United States dismissed Belden's appeal, thereby in effect affirming the Supreme Court of Ohio in favor of the defendant and sustaining the validity of the mutualization statutes.

In the meantime, two other policyholders had sued to enjoin the mutualization. This litigation was not finally concluded until June 1947.

Because of the pendency of this litigation, the meeting of the policyholders was adjourned from time to time. At the meeting on October 24, 1941, the meeting was adjourned to April 30, 1942, and finally, at another adjourned meeting, the meeting was adjourned to reassembly at the call of the superintendent of insurance. On the termination of the litigation challenging the right to mutualization, the superintendent of insurance sent notice to each of the policyholders who had attended the meeting of October 24, 1941, that the meeting would reconvene on June 26, 1947. At that meeting the policyholders voted in favor of mutualization on the plan submitted by the directors and stockholders.

It is urged that notice should have been sent to all

the holders of policies on the date of the notice. But this meeting was not of those policyholders. It was a continuance of the meeting of October 24, 1941. Those who had attended that meeting were the only ones eligible to attend the later session and resume consideration of the unfinished business of that meeting. When the policyholders convened and organized on October 24, 1941, and it was determined that a majority of the policyholders were present in person or by proxy, that body became the representative of the entire body of policyholders and authorized to accept or reject the proposal made by the stockholder. We hold that the notice was sufficient; that the meeting was duly held, and its action binding upon all the policyholders; and that upon the approval of such proceedings by the superintendent of insurance, the plaintiff became and is now a mutual insurance company.

Counsel insists that to require the defendants to submit to a valuation of their stock fixed in 1941, is inequitable, unjust, and confiscatory. In answer to this, we say that we are not convinced that the evidence shows that their stock, unfettered by the pendency of this mutualization plan, would be worth substantially more than $25 per share at the present time, but, aside from that, it does not seem that the defendants are in a position to challenge the consummation of this plan. They, as stockholders, initiated the plan. They made the offer to the policyholders in 1941. This offer remained pending during the intervening years. They had it in their power to withdraw this offer. Section 9364-2a, General Code. Undoubtedly, many annual meetings of stockholders took place during the pendency of this offer. Without doubt, special meetings of stockholders could have been called. At these meetings, the defendants could have secured a withdrawal of the plan, provided only that they secure the co-operation of the requisite number of their fellow stock-

holders, which would not have seemed too difficult, if the company assets available to stockholders had increased to the extent claimed. But the defendants took no action whatever to secure a withdrawal of the plan. After their offer had been accepted by the policyholders and approved by the superintendent of insurance, it was too late for withdrawal.

We are also of the opinion that the defendants are bound by the judgment declaring rights of stockholders in the *Ernestine Pattison case*. It is true that the court declared in that case that if the stockholders did not consent to comply with the demand that they surrender their stock for $25 per share, they could hold their stock until such time as the provisions of Section 9364-2*a*, General Code, had been complied with. That of course, is true, but when it appears that all the mutualization requirements have been met, that section has been complied with, and nothing remains to be done but the surrender and cancellation of the stock.

For these reasons, this court finds in favor of the plaintiff and awards to it the relief prayed for in its petition, and dismisses the cross-petition of the defendants.

*Judgment accordingly.*

HILDEBRANT, P. J., MATTHEWS and METCALF, JJ., concur.

METCALF, J., of the Fourth Appellate District, sitting by designation in the First Appellate District.